**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

SHERA M. STEERE,

               Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

No.  20-CV-2077-LRR-MAR

**ORDER**

I.      **INTRODUCTION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

II.     **RELEVANT PROCEDURAL BACKGROUND.** . . . . . . . . . . . . . . . . . . .2

III.   **STANDARD OF REVIEW.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

      A.    **Review of Final Decision.** . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
      B.    **Review of Report and Recommendation.** . . . . . . . . . . . . . . . . . . . .4

IV.   **OBJECTIONS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

      **Objection 1: Judge Roberts Erred in Finding the ALJ Fulfilled His Duty to
      Develop the Record** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
      **Objection 2:  Judge Roberts Erred in Finding the ALJ Properly Weighed Ms.
      Honsell's Opinions.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      **Objection 3:  Judge Roberts Erred in Finding the ALJ Properly Weighed
      Dr. Rathe's Opinions** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
      **Objection 4:  Judge Roberts Erred in Finding the ALJ Gave Good Reasons
      to Support his Assessment of Steere's Credibility** . . . . . . . . . . . . . . . . . .16
      **Objection 5:  Judge Roberts Erred in Denying Steere's Motion for
      Supplemental Briefing.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

V.     **CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

# I. INTRODUCTION

The matter before the court is Plaintiff Shera M. Steere's ("Steere") Objections (docket no. 26) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 25), which recommends that the court affirm the Commissioner's final decision to deny disability benefits to Steere.

# II. RELEVANT PROCEDURAL BACKGROUND

On October 5, 2020, Steere filed a Complaint (docket no. 4), seeking judicial review of the Commissioner's final decision denying Steere's application for Title II disability insurance benefits. On July 1, 2021, the Commissioner filed an Answer (docket no. 14). On September 14, 2021, the parties submitted a Joint Statement of Facts (docket no. 18). On September 30, 2021, Steere filed the Plaintiff's Brief (docket no. 19). On October 26, 2021, the Commissioner filed the Defendant's Brief (docket no. 20). On November 9, 2021, Steere filed the Reply Brief (docket no. 21). On November 10, 2021, 2021, the matter was referred to Judge Roberts for issuance of a report and recommendation. On March 31, 2022, Steere filed a motion requesting leave to file a supplemental brief, *see* docket no. 23, and, on April 5, 2022, Judge Roberts denied the motion. *See* docket no. 24. On April 22, 2022, Judge Roberts issued the Report and Recommendation (docket no. 25). On May 6, 2022, Steere filed the "Objections" (docket no. 26). On May 12, 2022, the Commissioner filed a "Response to [Steere's] Objections to the Report and Recommendation[]" (docket no. 27).

# III. STANDARD OF REVIEW

## A. Review of Final Decision

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). The court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The

2

Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id.* An ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but [it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017), *as corrected* (Apr. 25, 2017); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). A court "will disturb the ALJ's decision only if it falls outside the available zone of choice." *Kraus*, 988 F.3d at 1024 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it] been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley*

*v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## B. Review of Report and Recommendation

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to timely object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review of that portion of the report and recommendation. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that

4

Congress, in enacting § 636(b)(1), intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Thomas* 474 U.S. at 154.

## IV. OBJECTIONS

In the Objections, Steere argues that Judge Roberts erred: (1) in finding that the ALJ fulfilled his duty to fully and fairly develop the record; (2) in finding that the ALJ articulated sufficient reasons for finding Ms. Honsell's opinions unpersuasive; (3) in finding that the ALJ articulated sufficient reasons for finding Dr. Rathe's opinions unpersuasive; (4) in finding that the ALJ gave good reasons to support his assessment of Steere's credibility; and (5) in denying Steere's motion for supplemental briefing. *See generally* docket no. 26 at 2-7. After conducting a de novo review of the objected-to portions of the Report and Recommendation (docket no. 25) and the Record ("R") (docket nos. 15-1 through 15-9), the court finds as follows.

### Objection 1: Judge Roberts Erred in Finding the ALJ Fulfilled His Duty to Develop the Record

#### a. The Parties' Arguments

Steere alleges that the ALJ erred in failing to develop the record both prior to the last date insured and immediately after the last date insured ("LDI"). *See* Objections at 2-4.

With regard to the pre-LDI period Steere makes a conclusory statement:

The record was underdeveloped as to Ms. Steere's pre-date last insured and immediately post-date last insured mental health records, and the ALJ made erroneous inferences based on assuming Ms. Steere was not seeking treatment during this period, as explained in the principal briefing.

5

*Id.* at 2.

Regarding the pre-LDI records of counselor Gretchen Honsell, Steere argues that the ALJ did not fully and fairly develop the record and specifically asserts that it is possible Ms. Honsell did not provide Steere's medical records because she thought providing an opinion would comply with the request. *See id.* at 5.

Initially, the court notes that Steere's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A (emphasis added). Moreover, Steere's failure to object to Judge Roberts's findings on this point with any specificity means that Steere has waived her right to de novo review of this issue. *See Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, in this instance, the court shall review the ALJ's consideration of counselor Gretchen Honsell's pre-LDI and post-LDI treatment records. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

Regarding the post-LDI period, Steere's objections can be read to assert three arguments. First, Steere contends that Judge Roberts erred in finding it was proper and/or harmless error that the ALJ failed to procure Steere's ECT treatment records. *See* Objections at 3. Second, Steere argues that the ALJ erroneously assumed a gap in treatment existed because he failed to procure the notes from ECT treatment administered by Dr. Zdilar over a two-week period. Steere additionally argues that Judge Roberts erred in finding Steere's attorney at fault for not producing the ECT therapy records because the ALJ had a duty to develop the record regardless of whether Steere was represented. *Id.*

6

### b. Applicable Law

An ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012); *see also Smith v. Barnhart*, 435 F.3d at 930. While an ALJ has a duty to develop the record, this duty is not never-ending. *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). An ALJ may issue a decision without obtaining additional medical evidence when other evidence in the record is adequate for the ALJ to make an informed decision. *Haley v. Massanari*, 258 F.3d 742, 749-750 (8th Cir. 2001). Moreover, "reversal for failure to develop the record is warranted only when such failure is unfair or prejudicial." *Twyford v. Comm'r Soc. Sec.*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (quotation omitted).

The Eighth Circuit has held:

> Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment. Past this point, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

*Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013) (internal citations omitted).

Effective March 27, 2017, new regulations imposed upon claimants and their representatives a reciprocal duty to inform the SSA about or submit to the SSA all known medical evidence which relates to the issue of their disability in order to assist in developing the record. "Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in 20 C.F.R. § 404.1512, no later than 5 business days before the date of the scheduled hearing" (the "Five-Day Rule"). 20 C.F.R. § 404.935(a). If a claimant fails to comply with this requirement, the ALJ "may decline to consider or obtain the evidence," 20 C.F.R. § 404.935(a), unless the claimant: (1) was misled by an action taken by the Social Security Administration; (2) had physical, mental, or linguistic limitations that prevented her from submitting the evidence earlier; or

(3) was prevented from submitting the evidence earlier by "[s]ome other unusual, unexpected, or unavoidable circumstance" beyond her control." 20 C.F.R. § 404.935(b).

The Five-Day Rule gives the ALJ discretion to admit or exclude the late-submitted evidence. *Id.* ("If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence...."). Accordingly, the court reviews the ALJ's decision whether to allow evidence not disclosed to the ALJ at least five days prior to hearing for abuse of discretion. *See Passmore v. Astrue*, 533 F.3d 658, 665-66 (8th Cir. 2008) (where agency regulation confers discretion on the ALJ, court's review is for abuse of discretion).

### c. *Application and Discussion*

*Counselor Gretchen Honsell's records*

Judge Roberts reasoned that Steere had not shown prejudice due to the ALJ's failure to obtain Ms. Honsell's records and that Steere had failed to provide compelling evidence that the records in fact existed at the time of the hearing. *See* Report and Recommendation at 17-21.

Ms. Honsell treated Steere from September 1, 2015, through December 16, 2015, at the University of Northern Iowa Counseling Center. R 604. The SSA requested records from Ms. Honsell and she acknowledged the request for records but provided only a brief one-page report. *Id.* Ms. Honsell stated, "I have not seen Ms. Steere since [December 15, 2016], and my last communication with her, other than when I received your records request, was to provide community referrals to her in January of 2016. I am not the appropriate person to do a current evaluation on the client." *Id.*

Additionally, the SSA requested Steere's medical records from UNI Iowa Health Services ("UNI") on April 6, 2018, and, in response to that request, on April 23, 2018, UNI submitted Steere's medical records. R 278-289.

8

Having reviewed the record, the court finds that Steere has not shown that she was prejudiced and has not shown that the ALJ failed to fulfill his duty or that the records in question still exist. The records were requested from both Ms. Honsell and UNI. UNI provided medical records in response to the request, but the records provided did not contain any treatment records from Ms. Honsell. Ms. Honsell also did not provide any records but on the face of her report she states that she received "a request for records." R 604. The plain language of Ms. Honsell's letter makes clear that she was aware that she was being asked for records and not for a report, thus the implication of her response is that she either could not or would not provide the records.

Steere's argument that Ms. Honsell possibly misunderstood the nature the request for records is unpersuasive. The plain language used by Ms. Honsell cannot be interpreted in the manner which Steere argues, as Ms. Honsell was clearly aware she was being asked for medical "records" and not a report.

Absent unfairness or prejudice, remand is not required. Here, Steere has pointed to no actual prejudice. Accordingly, the court overrules this objection.

*The ECT Therapy Records*

Judge Roberts noted that the ALJ articulated a detailed chronology of Steere's mental health treatment during the relevant time period, and that the ALJ acknowledged in his decision that Steere's treating source thought ECT an appropriate therapy for Steere. *See* Report and Recommendation at 14-15. Judge Roberts reasoned that the decision thus made clear that the ALJ properly considered Steere's overall treatment and referral for ECT. *Id.* Judge Roberts additionally reasoned that the ALJ did not rely on the gap in Steere's treatment to deny her claim and that even if the ECT records had been submitted, they covered only a two-week period, after which there was in fact a gap in treatment. *See id.* at 15. Lastly, Judge Roberts reasoned that the records would not have been probative as to whether Steere suffered a disability prior to her LDI because the treatment was not rendered in the relevant time period. *Id.*

9

Having reviewed the record, the court finds that the ALJ did not abuse his discretion in failing to request the ECT therapy records. As was noted by Judge Roberts, the record reflected that Steere's treating source, Dr. Rathe, opined ECT therapy would be an appropriate therapy and had referred Steere for such treatment. R 553. Thus, the ALJ was able to issue a decision without obtaining additional medical evidence because "other evidence in the record" provided a sufficient basis for the ALJ's consideration of the ECT therapy. *See Kamann* 721 F.3d 945.

Additionally, Steere has shown no prejudice. Steere fails to articulate any evidence which the ECT records would contain that are not evident in Dr. Rathe's records. Also, Steere does not provide any evidence that beyond the two-week period in which she was receiving ECT therapy that she sought additional psychiatric care. As such, the ALJ's reference to a gap in treatment was supported by the record. Thus, Steere has failed to meet her burden in showing harm.

The court is also mindful that the ECT records were not submitted by Steere in the appropriate time period, nor did Steere's attorney notify the ALJ that the records were absent until the day of the hearing. R 30. Steere did not provide any evidence or set forth any argument that she was entitled to an exception to the Five-Day Rule. In fact, Steere's attorney acknowledged that he had not been diligently seeking the records and had not requested them prior to the day of the hearing. R 30. The ALJ had the discretion to close the hearing record and deny Steere's request to submit the records. He did not do so and instead generously stated to Steere's counsel that counsel could submit the ECT records. R at 30. Steere's attorney did not submit the records in a timely manner and there is no evidence in the record that Steere's attorney requested additional time to submit them or requested the assistance of the ALJ to obtain them.

In these circumstances, the court finds that the ALJ did not abuse his discretion. The admission of those records was discretionary and the ALJ may have properly denied Steere's request to submit the records late. Rather than deny Steere's motion for leave to submit the records late, the ALJ stated that he would not hold the record open but

10

would allow Steere's attorney to submit the records. Steere requests that the court interpret the ALJ's statement to hold that the ALJ agreed to leave the record open indefinitely and assume the duty to obtain said evidence. The court cannot find that such an interpretation was consistent with the ALJ's statement and finds it is also inconsistent with the intent of the Five-Day Rule.

### Objection 2: Judge Roberts Erred in Finding the ALJ Properly Weighed Ms. Honsell's Opinions

#### a. The Parties' Arguments

Steere offers a purely conclusory argument that "[b]ecause the ALJ did not articulate sufficient reasons for finding Ms. Honsell's treating therapist opinions unpersuasive, harm is apparent, and this Court should reverse the ALJ's decision and remand Ms. Steere's claim." Objections at 4.

The court presumes that Steere objects to Judge Roberts's conclusion that "I recommend the District Court affirm this part of the ALJ's decision." Report and Recommendation at 36. The court notes that like Steere's argument for Objection 1, Steere's present argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A (emphasis added). Nevertheless, in this instance, the court shall review the ALJ's consideration of counselor Gretchen Honsell's opinions. *See Thomas*, 474 U.S. at 154.

#### b. Applicable Law

The standard for evaluating medical opinion evidence for cases filed after March 27, 2017, is articulated in 20 C.F.R. § 404.1520c. Under these new rules, an ALJ is no longer obligated to follow the "Treating Physician Rule" or otherwise provide "good reasons" for failing to do so. *See* 20 C.F.R. § 404.1520c. Also under the new rules, no medical opinion is automatically given controlling weight but instead is considered as to

the persuasiveness of the opinion. *See* 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *See* 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5)." *Id.* An opinion is more persuasive if it is consistent with and supported by the medical evidence as a whole. *See* 20 C.F.R. § 404.1520c(c)(1-2).

Supportability concerns the internal consistency a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

Consistency concerns the external consistency the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### c. Application and Discussion

Judge Roberts reasoned, "To the extent Ms. Honsell's assessment that Claimant could not function in an academic setting is even relevant, this evidence supports the ALJ's conclusion that Claimant was able to engage in school after December 2015.… The evidence also undermines Claimant's argument that Ms. Honsell predicted Claimant's future academic struggles. While Claimant had some difficulties returning to graduate school, she was able to successfully complete both fall 2016 and spring 2017 semester classes." Report and Recommendation at 34.

In the decision, the ALJ addressed Ms. Honsell's opinions as follows:

In May 2018, Gretchen Honsell, MA, LMHC, NCC, wrote a brief statement on the claimant's behalf (8F). Ms. Honsell opined that the claimant's functioning and judgment were impaired to the point that she could no longer personally and professionally function in an academic setting. Ms. Honsell had seen the claimant from 09/01/2015- 12/16/2015. The undersigned finds this opinion to be unpersuasive because it is inconsistent with and not supported by the longitudinal evidence of record. It is inconsistent with the record because the record shows that the claimant was able to engage in school after December 2015. It is not supported by the record because Ms. Honsell does not even support her own opinion but rather stated "I am not the appropriate person to do a current evaluation on the client" (8F p.3). The claimant had a brief treating relationship with Ms. Honsell.

R 17.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Ms. Honsell. The ALJ justifiably found Ms. Honsell's opinion unpersuasive because it lacked both supportability and consistency.

The ALJ found that Ms. Honsell's opinion was based upon a brief treatment relationship which was not rendered during the relevant time period. The ALJ further reasoned that Ms. Honsell indicated that she was not an appropriate person to render an opinion. These facts specifically relate to the supportability of the opinion, as those facts address the internal support for the opinion pursuant to 20 C.F.R. § 404.1520c(c)(1). Thus, the ALJ fulfilled his obligation to address the supportability of the opinion.

Additionally, the ALJ addressed the external inconsistency of Ms. Honsell's opinion that Steere could not function in an academic setting after December 2015 with evidence in the record that Steere did in fact continue to function in an academic setting to the extent that she was attending graduate classes in the Fall of 2016 semester as well as the Spring 2017 semester. Thus, the ALJ also fulfilled his duty to addresses the consistency of the opinion pursuant to 20 C.F.R. § 404.1520c(c)(2).

13

While the ALJ could have better articulated his reasons for the persuasiveness afforded to Ms. Honsell's opinions, "[a]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (second alteration in original) (quoting *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. Accordingly, the court shall overrule this objection.

### Objection 3: Judge Roberts Erred in Finding the ALJ Properly Weighed Dr. Rathe's Opinions

#### a. The Parties' Arguments

Steere's objection can be generously read to assert that Judge Roberts erred in finding that the ALJ's determination that Dr. Rathe's opinions were unpersuasive was supported by the record as a whole and should be affirmed. *See* Objections at 5.

Steere argues:

> Dr. Rathe's notes supported her opinions, including her findings on exam. (*See* Pl. Br. at 13-15, ECF No. 19). Still, the ALJ dismissed Dr. Rathe's treating opinions as not supported because Ms. Steere was able to have a routine [in that,] the claimant was going to the gym and exercising three times a week." (TR 17). This was not a sufficient reason for finding Dr. Rathe's opinions not supported

*Id*.

#### b. Applicable Law

The standard for the evaluation of Dr. Rathe's medical opinion, like that of Ms. Honsell, is articulated at 20 C.F.R. § 404.1520c. As was noted above, the most important factors which an ALJ must consider in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(c).

14

### c. *Application and Discussion*

Judge Roberts addressed the ALJ's finding regarding the persuasiveness of Dr. Rathe's opinion and stated, "There is no indication that [Dr. Rathe] limited her opinions to the relevant time period.... A sign that Dr. Rathe did not limit her opinions to the relevant time period is her response to the first interrogatory, which asks 'Frequency and length of contact.' (*Id.*) Dr. Rathe responded, 'Initial visit 4-13-16; . . . Last visit—8-15-19.' Dr. Rathe also lists prescribed medications in her opinion that Claimant was not taking on March 30, 2017, the last time she saw Dr. Rathe during the relevant time period." Report and Recommendation at 38.

In the decision, the ALJ addressed Dr. Rathe's opinion as follows:

> In May 2019, Ann Rathe, M.D., wrote a statement on the claimant's behalf (9F). Dr. Rathe had a treating relationship with the claimant and started seeing her in April 2016. Dr. Rathe opined that the claimant has been chronically disabled by anxiety and depression since she met her in 2016. A ruling of disability is left to the Commissioner. She stated that the claimant's depression made it impossible for her to sustain a normal daily routine. She also stated that the claimant is very socially isolated. The claimant stated that her only social contact is with family with whom she lives. The undersigned finds this opinion to be unpersuasive because it is inconsistent with and not supported by the longitudinal evidence of record. Notably, the opinion was written almost 2 years after the claimant's date last insured. And while Dr. Rathe did have a treating relationship with the claimant prior to her date last insured this opinion is not supported by the record during that period of time. It is not supported because the claimant was able to have a routine [in that,] the claimant was going to the gym and exercising three times a week. This opinion is inconsistent with the record because the claimant was not socially isolated as Dr. Rathe had stated. Dr. Rathe stated that the claimant only interacts with the family she lives with. In contrast, the record shows that the claimant went out to movies and hung out with friends. In addition, the record reveals that the claimant was able to sustain an interpersonal relationship with a boyfriend.

R 17.

On its face, the ALJ's determination was much more reasoned than Steere asserts in her argument and, contrary to the objection, not solely predicated on Steere's ability

to exercise at a gym. The ALJ articulated several reasons for affording limited persuasiveness to Dr. Rathe's opinion. The primary reason given by the ALJ for affording Dr. Rathe's opinion limited weight is that it is in contradiction to the longitudinal history. R 17.

The court agrees with Judge Roberts that Dr. Rathe's own treatment notes belie her opinion. *See* Report and Recommendation at 41. Indeed, Dr. Rathe's opinion that Steere suffers extreme limitations in social functioning and only interacts with family is contradicted by entries in her own reports. Dr. Rathe herself noted that Steere went to the movies with friends, planned her niece's shower, and engaged in a long-term romantic relationship. R 461, 464, 479, 485, 488, 491. Additionally, the ALJ considered that Dr. Rathe's opinions were rendered two years after the relevant time period and that her opinion is not supported by the record during the relevant time period. R 17.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the persuasiveness of the opinion evidence provided by Dr. Rathe. The ALJ justifiably discounted Dr. Rathe's opinions because her opinions were "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence in the record as a whole. Substantial evidence in the record as a whole supports the ALJ's RFC determination, so the court will affirm the decision of the Commissioner as within a "reasonable zone of choice." Accordingly, the court will overrule this objection.

**Objection 4: Judge Roberts Erred in Finding the ALJ Gave Good Reasons**
**to Support his Assessment of Steere's Credibility**
**a. The Parties' Arguments**

Steere argues that the ALJ failed to properly weigh her subjective complaints of pain and mental illness. *See* Objections at 6. Specifically, Steere summarily states:

The [Report and Recommendation] addressed this argument at pages 50 through 56. (*See* R&R at 23-36, ECF No. 25).  Plaintiff objects to the R&R for the reasons offered in Plaintiff's Brief.

*Id.*

The court notes that Steere's present argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A (emphasis added).  Nevertheless, in this instance, the court shall review the ALJ's consideration of Steere's credibility.

### b. *Applicable Law*

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017).  In *Polaski*, 739 F.2d 1320, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322.  The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue,* 552 F.3d 728, 733 (8th Cir. 2009)).

An ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th

Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'" (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003))). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### c. Application and Discussion

Judge Roberts determined that, "the ALJ acknowledged Claimant's limitations and crafted an RFC that accommodated those limitations after properly evaluating Claimant's subjective complaints." Report and Recommendation at 56. In reaching this determination, Judge Roberts considered that the ALJ thoroughly documented Steere's treatment history. *Id.* at 50-56. Judge Roberts noted specifically that: "The ALJ devoted over a half a page of his opinion to the critical months of January through March 2017 when [Steere] experienced the most rapid decline in her symptoms. (*Id.* at 16). In addition, although [Steere] lives with her father and sister, [Steere] does not cite evidence

18

supporting her statement that she is unable to live independently, rather than that she lives with her family for financial or other reasons." *Id*. at 55.

The ALJ began his recitation of the medical evidence by noting that records from March 2016, one year prior to Steere's date last insured, indicate she was doing well and that she was taking prescribed medication which was working well. R 14. In April, her condition remained stable. *Id*. Treatment notes from May 2016 indicate that Steere took a temporary break from graduate school but was doing well on her medication. *Id*. at 15. Treatment notes from early June 2016 indicated that Steere was socializing and planning family events. *Id*. In late June of 2016 Steere was depressed after breaking up with her boyfriend but was interested in seeing other people socially. *Id*. In July 2016, Steere was improved and seeing others socially. *Id*.

The ALJ noted that in August of 2016, Steere was again attending graduate school and was doing well, with reports that her medication helped her symptoms. *Id*. In October of 2016, Steere's condition remained stable. *Id*. In January of 2017, Steere presented to Rathe with a disheveled appearance and reported that she had stopped taking her medications. *Id*. By February 2017, Steere's condition improved when she became compliant with medications. *Id*. The ALJ noted that in early March 2017, Steere was doing well and socializing with friends but that in late March 2017, Steere presented to the emergency department with increased stress and anxiety. *Id*.

The ALJ stated:

On March 30, 2017 it was noted that the claimant was doing poorly and very depressed (6F p.3). The claimant's medications were modified (6F p.3). As noted above, previously the claimant's symptoms were well controlled by medication. The record reveals that the claimant's symptoms were exacerbated due to situational factors including relationship issues right before her date last insured. However, prior to the March incident the claimant was never hospitalized due to mental health and it is to be noted that the claimant only spent the night in the emergency room and was not an inpatient. Notably, after the claimant's date last insured there is a significant gap where she did not receive treatment. The record reveals the next time she was seen for her mental health was in 2019 (11F).

19

*Id*.

The ALJ went on to render a finding regarding Steere's credibility, stating:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

R 17.

The ALJ noted that the following factors must be considered: (1) The claimant's daily activities; (2) The location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the claimant uses or has used to relieve pain of other symptoms; and (7) Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. R 17-18.

The ALJ then reasoned:

Notably, the record of evidence revealed that the claimant able to go outside and pursue interests for example the claimant was jogging (3F p.8). She started a couch to 5k program (3F p.21). The claimant was going to the gym and made that a routine part of her life (3F p.21). In March 2016, the claimant was getting out regularly and seeing her friends and nieces (3F p.21). In June 2016, the claimant was exercising 3 times a week (5F p.71). As mentioned above, the claimant was able to interact with others and go to a movie as well as carryon [sic] a relationship. In addition, she was able to plan her niece's shower.

R 18.

20

It is clear from the ALJ's decision that he thoroughly considered and discussed Steere's treatment history, medical history, functional restrictions, activities of daily living, work history and use of medications in making his credibility determination. Specifically, the ALJ considered that when she was compliant with her medication Steere could maintain social functioning and a busy schedule.

Having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Steere's subjective allegations of disability were not credible. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints). Because the ALJ seriously considered, but for good reasons explicitly discredited, Steere's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

### Objection 5: Judge Roberts Erred in Denying Steere's Motion for Supplemental Briefing

#### a. The Parties' Arguments

Steere objects to Judge Roberts' denial of her March 31, 2022, motion for leave to file a supplemental brief in which she would raise an appointments clause challenge. *See* Objections at 7-11; *see also* docket nos. 23, 24.

Steere offers two arguments. First, Steere raises a factual argument that the briefs submitted in *Brian T.D. v. Kijakazi*, No. 19-CV-2542 (DTS), 2022 WL 179540 (D. Minn. Jan. 20, 2022) were crafted by his co-counsel Mahesha Subbaraman and that Judge

Roberts erred in not recognizing that fact.  *See* Objections at 7.  Additionally, Steere argues that pursuant to *Freytag v. Comm'r*, 501 U.S. 868, 111 S. Ct. 2631, 115 L. Ed. 2d 764 (1991) and *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764 (8th Cir. 2013), Judge Roberts should have granted Steere's motion.

### b.  Applicable Law

"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944).

The courts will generally not consider an argument that was not made in a party's opening briefs and was only raised in a Rule 28(j) letter.  *Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers,* 501 F.3d 912, 914 n. 3 (8th Cir.2007).  This rule is normally discretionary, and *Freytag* indicates that a reviewing court generally is permitted (though not obliged) to hear a belated appointments clause challenge. *N.L.R.B.*, 734 F.3d at 795.  Good cause or extraordinary circumstances must be shown to justify a reviewing court to permit argument of an issue not raised during initial briefing.  *Id.*

"A modification to a scheduling order is proper only when the movant has demonstrated good cause.  Fed. R. Civ. P. 16(b).  The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) (quoting *Bradford v. Dana Corp.,* 249 F.3d 807, 809 (8th Cir. 2001)).

### c.  Application and Discussion

On April 5, 2022, Judge Roberts denied Steere's Motion for Supplemental Briefing concerning the January 2022 ruling in the case *Brian T.D.* and noted that all briefing in the case at bar was completed on November 10, 2021.  *See generally* docket no. 24. Judge Roberts reasoned in part that, "The motion before the Court was filed months after

this case was ready for decision. Except for the decisions in *Brian T.D.* and *Richard J.M.*, [Steere] does not assert any reason this motion could not have been included when she filed her September 30, 2021 brief or her November 9, 2021 reply. The late-filing is puzzling in light of the fact that [Steere's] attorney also represented the claimant in *Brian T.D.*" *See* docket no. 24 at 3.

> Judge Roberts further reasoned:

> [Steere] has offered no reason that this argument could not have been raised "at the outset of this litigation" in October 2020. [*David P. v. Kijakazi*, No. 20-cv-1586 (TNL) 2022 WL 594372, at *2 (D. Minn. Feb. 28, 2022)]. Although Brian T.D. was not yet decided at that time, this is not an unfair suggestion because [Steere's] attorney was the attorney in Brian T.D. and initial briefing was filed in Brian T.D. in February 2020. [*Elizabeth A.W. v. Kijakazi*, No. 20-cv-1733 (JRT/JFD), 2022 WL 867293, at *2 (D. Minn. Mar. 23, 2022)]. At the very least, [Steere] could have briefed the issue in her November 2021 reply, three months after attorneys supplemented arguments in Brian T.D.

*Id.*

The court notes that all briefing in *Brian T.D.*, including supplemental briefing, was completed in October of 2021, prior to the filing of Steere's reply brief on November 10, 2021. *See Brian T.D. v Kijakazi*, No. 19-CV-2542 (DTS) (D. Minn. Jan. 20, 2022), docket nos. 50, 51, 52, 61, 62. Steere fails to articulate her rationale as to why the identity of the person who crafted the argument in *Brian T.D.* is relevant to the case at bar. The issue to be addressed is not who authored the argument but rather when Steere's attorneys were aware of it. The record makes clear that Steere's attorneys represented the plaintiff in *Brian T.D.* and thus were aware of the argument at least by October 25, 2021, prior to the close of the briefing schedule in this case. Notably, the decision in *Brian T.D.* was issued on January 20, 2022. *See Brian T.D. v Kijakazi*, No. 19-CV-2542 (DTS) (D. Minn. Jan. 20, 2022), docket no. 63. Steere continued to wait until March 31, 2022, to file her motion for leave to file a supplemental brief.

The court finds Steere's reliance on *Freytag v. Comm'r*, 501 U.S. 868 to be misplaced in such circumstances. This case is easily distinguished from *Freytag*, 501 U.S. 868. First, as noted by the Commissioner, "*Freytag* was a "rare" case, *id*. at 879, and while 'courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims,' there is 'no basis for the assertion that the structural nature of a constitutional claim in and of itself constitutes such a circumstance.' *Id*. at 894 (Scalia, J., concurring in part and concurring in the judgment)." Commissioner's Response (docket no. 27) at 3. Additionally, the litigants in *Freytag*, 501 U.S. 868, failed to challenge the authority of a specially appointed trial judge in Tax Court during the pendency of the proceedings but properly raised the issue on appeal. The court finds no language in *Freytag,* 501 U.S. 868 which would indicate that a litigant who was aware of an appointments clause challenge may sit on their hands and then request leave to raise the issue after the close of briefing. Indeed, Steere points to no such language.

As to the second case on which Steere relies, it similarly fails to support her contention. In *N.L.R.B.*, 734 F.3d at 795, the Eighth Circuit held that good cause or extraordinary circumstances must be shown to justify a reviewing court to permit a late-raised argument to be made. In the case at bar, Steere has articulated no good cause for her failure to raise the issue in a timely manner. The record demonstrates a lack of diligence on Steere's part in raising the appointments clause argument she now seeks to introduce. As noted above, Steere's attorneys failed to raise the issue in October of 2021 when they filed supplemental briefs regarding the issue in *Brian T.D*. Steere's attorneys again failed to raise the issue when they filed their reply brief on November 10, 2021. Steere's attorneys also failed to raise the issue in January of 2022 when the decision in *Brian T.D*. was rendered. Despite being aware of the argument since August of 2021 when supplemental briefing was ordered in *Brian T.D.*, Steere's attorneys waited until March 31, 2022, to raise the issue in this case. Moreover, Steere provides the court with no reasonable explanation or excuse for that eight-month delay.

24

Here, Steere is asking the court to modify its scheduling order. As noted above, Steere is required to show that she acted diligently in order to prove "good cause" for such a motion to be granted. *See Rahn v. Hawkins*, 464 F.3d at 822. Steere has failed to meet that burden. As such, the court declines to hear the late-raised issue. Accordingly, the court overrules this objection.

## V. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 26) are **OVERRULED**; and

(2) The Report and Recommendation (docket no. 25) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 4) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**DATED** this 27th day of June, 2022.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

25